No. 64,249

In the Matter of LARRY D. EHRLICH, *Respondent.*

(804 P.2d 958)

Opinion filed January 18, 1991.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio,* of John J. Ambrosio, Chartered, of Topeka, argued the cause for respondent.

*Per Curiam:* This is an original attorney discipline proceeding filed by the Office of the Disciplinary Administrator against Larry D. Ehrlich, of Russell, Kansas, an attorney duly admitted and licensed to practice law in the State of Kansas.

A formal hearing was held before a disciplinary panel of the State Board for Discipline of Attorneys on August 24, 1989. Respondent appeared in person. The hearing panel report states:

"Thereupon, the Respondent stipulated that the allegations of the formal complaint are true and that if the Disciplinary Administrator's Office were to offer evidence in support thereof, the allegations would be proven by clear and convincing evidence.

"The panel unanimously accepted the stipulations of the parties and upon the pleadings, the evidence and the stipulations, and after hearing the statements of the Office of the Disciplinary Administrator and the Respondent, the panel unanimously makes the following findings of fact from clear and convincing evidence."

The findings of fact, taken from the Final Hearing Report of the Kansas Board for Discipline of Attorneys, filed September 20, 1989, are as follows:

"1. The Respondent, Larry D. Ehrlich, is an attorney at law, Kansas Attorney Registration #08324, with a registration address with the Clerk of Appellate Courts as Bankers Building, P. O. Box 431, Russell, Kansas 67665. The Respondent has practiced law in Russell, Kansas for over 15 years and has served as Russell County Attorney.

[COUNT I]

"2. Faye Charles, the Complainant, retained Respondent to probate the estate of her uncle, John Addington. Respondent was retained soon after the death of Mr. Addington on October 19, 1986.

"3. To the date of the hearing the Respondent had taken no action to probate the Addington estate. The Complainant and various other people associated with the estate have tried on numerous occasions to contact the Respondent with regard to the estate and the Respondent has failed and refused to communicate with those persons.

"4. The Respondent has property of the estate in his possession for which no accounting has been made.

[COUNT II]

"5. In October 1986 Charles J. Sellens and Paula J. Sellens transferred their interests in certain oil producing properties to their sons, Chuck and Jason. The Respondent was retained by Charles J. Sellens to do all the legal work with regard to the transactions.

"6. On several occasions in 1987 Charles J. Sellens contacted the Respondent to find out the status of the transactions. Sellens was told by the Respondent that the transactions had been taken care of, including the recording of the deeds evidencing the transactions.

"7. On December 8, 1987, a judgment was taken against Charles and Paula Sellens and on January 5, 1988, as a result of the judgment taken against the Sellens, the property which Respondent had represented to have been transferred to Chuck and Jason Sellens, was levied upon.

"8. Charles Sellens immediately contacted the Respondent about the execution and was told by the Respondent that the deeds had been properly recorded and that any execution on the property would be invalid. Later Respondent admitted to Charles Sellens that the deeds had not been recorded.

"9. On January 28, 1988, a sheriff's sale occurred and at that sale the Respondent purchased one of the three mineral interests which were to have been transferred from Charles Sellens to his sons. The Respondent purchased this mineral interest in the names of Chuck and Jason Sellens. The other two interests were purchased by a man named Willie Shultz.

"10. Subsequent to the sheriff's sale, the Respondent told Charles Sellens that he would transfer the property he purchased to Chuck and Jason Sellens. He also told Charles Sellens that he would take whatever action was necessary to reclaim the mineral interests sold to Willie Shultz. The Respondent failed to take any further action with respect to any of the mineral interests to the date of the hearing.

"The Respondent failed to cooperate in the investigation of this matter in violation of Supreme Court Rule 207 [1990 Kan. Ct. R. Annot. 141].

[CONCLUSIONS]

"The panel unanimously makes the following conclusions:

"1. Upon the aforestated findings the Respondent violated DR 9-102(B) [1990 Kan. Ct. R. Annot. 204] and by his conduct after March 1, 1988, violated MRPC 1.15 [1990 Kan. Ct. R. Annot. 247] in his representation of Faye Charles.

"2. In his actions with respect to the representation of Charles J. and Paula J. Sellens, the Respondent violated DR 1-102(A) [1990 Kan. Ct. R.

Annot. 165]; DR 6-101(A)(3) [1990 Kan. Ct. R. Annot 188]; DR 7-101(A) [1990 Kan. Ct. R. Annot. 193]; DR 9-102(B)(1), (3) and (4) and by his conduct following March 1, 1988, has violated MRPC 1.3 [1990 Kan. Ct. R. Annot. 219], 1.4(a) [1990 Kan. Ct. R. Annot. 220], 1.15 and 8.4(c) [1990 Kan. Ct. R. Annot. 290].

"3. By the Respondent's failure to respond to inquiries from members of the Bar assigned to investigate the complaints, the Respondent has violated Supreme Court Rule 207(b).

"Recommended Discipline

"In his statements to the panel, the Respondent offers no excuse or reason for his misconduct other than embarrassment to communicate with the investigating members of the Bar. Further, the Respondent did not indicate to the panel what steps, if any, would be taken by him in the future to avoid further misconduct. The Respondent did offer restitution at the hearing, but offered no concrete plan or timetable for restitution. Although the Respondent is an experienced, mature lawyer and the panel is only aware of these two complaints, the panel is not convinced that the Respondent is prepared to discharge his professional duties to clients, the public, the legal system, or the profession and therefore unanimously recommends that the Respondent be indefinitely suspended from the practice of law."

Thereafter, respondent contacted his friend, John Ambrosio, who agreed to represent him. Mr. Ambrosio requested the opportunity to have respondent evaluated by the Menninger Foundation prior to the imposition of discipline. The request was granted. Pursuant to an order of this court dated December 28, 1989, the matter was remanded to the panel for consideration of respondent's evidence of mitigation. The hearing thereon was held on May 30, 1990.

The panel's supplemental hearing report provides, in part:

"3. As shown by respondent's Exhibit 1 and as supplemented by Dr. Maxfield's testimony, the respondent was found to be suffering from major depression without psychotic overtones and to have an obsessive-compulsive personality disorder.

"4. The respondent has since that date received extensive psychological counseling and medication for his depression. Respondent has made excellent progress in recovery from the depression. He recognizes and is dealing with the personality disorder. . . .

"5. The respondent has withdrawn from his law partnership, concluded his affairs and discontinued the practice of law effective January 19, 1990.

"6. The respondent has either made full restitution or has reached a compromise which will result in full restitution to the complainants.

"7. The respondent has determined to discontinue the practice of law, has taken a job with an insurance company in Wichita and is making arrangements to move his family to Wichita as soon as practicable."

The panel then recommended the following:

"The panel is of the opinion that the factors cited by the panel in its Recommended Discipline section of the September 19, 1989, report have materially changed. The respondent has now made full restitution, is seeking treatment for the factors which apparently caused his misconduct and certainly may now be said to be taking concrete steps to avoid further misconduct. The panel therefore recommends that the respondent be disciplined by suspension of his license for a period of one year at which time he be readmitted without petition . . . ."

This recommendation was followed by a number of conditions that respondent had to comply with during the period of suspension. These were primarily concerned with respondent continuing his treatment program.

We have carefully reviewed the record herein. The panel was obviously impressed with the steps respondent has taken to get his professional and personal life in order since the first hearing herein and desired to encourage the progress respondent is making. We essentially accept the panel's amended recommendation.

IT IS THE ORDER OF THE COURT that Larry D. Ehrlich be indefinitely suspended from the practice of law, provided, however, that he shall be readmitted after one year's suspension without petition if he establishes to the satisfaction of the Disciplinary Administrator that he has complied with the following conditions:

1. continued his therapy programs at the Menninger Foundation in effect on May 30, 1990, or such successive programs at Menninger or elsewhere if referred by the Menninger Foundation;
2. faithfully taken all medication prescribed through his treatment programs;
3. not engaged in the practice of law;
4. earned the minimum continuing legal education credit hours required for the period involved; and
5. paid the costs of this proceeding.

IT IS FURTHER ORDERED that this order be published in the Kansas Reports, and that respondent pay the costs of this proceeding.